**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Efrain SANTOS, Defendant-Appellant.**

**No. 16207.**

United States Court of Appeals
Seventh Circuit.

Nov. 13, 1967.

Rehearing Denied Dec. 1, 1967.

Max Cohen, Gary, Ind., for defendant-appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Richard F. James,

Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, and CASTLE and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

Defendant Santos was charged in five counts of a six-count indictment with violating federal laws pertaining to marihuana, 18 U.S.C. § 371, 26 U.S.C. § 4742(a), 26 U.S.C. § 4744(a) (1), 18 U.S.C. § 371 and 26 U.S.C. § 4742(a). Two of the counts charged a conspiracy with reference to events alleged to have occurred on April 16, 1966 and on May 4, 1966.

The principal claim of error relates to the admission into evidence of extra-judicial hearsay declarations made by other defendants not on trial and outside the presence of appellant, and, as defendant claims, before proof of any conspiracy had been offered. It also is claimed by appellant that there was no independent proof of the alleged conspiracy absent the extra-judicial declarations of the co-defendants.

Two of the defendants charged with appellant, Francisco Arroyo and Raymond Arroyo, each entered a plea of guilty to the conspiracy counts before the trial commenced. At the conclusion of all of the evidence, two other defendants, DeJesus and Morales changed their pleas from not guilty to guilty as to the conspiracy count.

■ In order for such hearsay declarations, as here in question, to be admissible for the purpose of proving a defendant guilty under a conspiracy count, certain conditions must be met: The declarations must be made during the existence of the conspiracy and they must be made in furtherance of the conspiracy. Glasser v. United States (1942), 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680. Furthermore, there must be sufficient evidence aliunde extra-judicial declarations of co-conspirators establishing the existence of the conspiracy and connecting the appellant with

it. The independent evidence establishing the existence of such a conspiracy may be direct evidence or circumstantial evidence. United States v. Iacullo (7 Cir., (1955), 226 F.2d 788, cert. den. (1956), 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839, Glasser v. United States, supra, 315 U.S. page 80, 62 S.Ct. 469.

■ The phraseology of the Supreme Court in the *Glasser* case appears at page 80 of the opinion, 62 S.Ct. at page 469: "* * * Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a co-location of circumstances.'" The Court then said: "* * [T]he jury could infer the existence of a conspiracy and the participation of (the defendant) in it."

In the case at bar, the trial judge made a preliminary determination that the evidence, independent of the extra-judicial declarations complained of, was sufficient to make a *prima facie* showing of the existence of a conspiracy and of defendant Santos' connection therewith.

Bernard Coulter, a federal narcotics agent, negotiated on April 16, 1966, for the purchase of one and a half pounds of marihuana. The agent, the brothers Arroyo and the informer drove to East Chicago, Indiana, on April 16 in Coulter's automobile. Raymond Arroyo directed Coulter to park the car across the street from 3320 Michigan Avenue. Arriving there, Raymond Arroyo left the automobile and entered the Frontier Bar at 3320 Michigan Avenue. After a few minutes there, Arroyo returned to the car and stated Santos was at another bar. They then drove around the area and encountered Santos in an automobile. Arroyo got out of Coulter's automobile, walked over to Santos and talked with him. Arroyo then returned to the Coulter automobile which was again driven to 3320 Michigan Avenue. Coulter testified he saw Santos get out of his automobile and stand in front of the Frontier Bar where he was joined by Raymond Arroyo. They con-

versed briefly and Arroyo returned to the Coulter automobile saying that Santos wanted $50 "to get the deal to move." Coulter then handed $50 to Raymond Arroyo who walked directly across the street, extended his hand to Santos who also extended his hand. Santos then placed his hand in his pocket and entered the doorway immediately south of 3320 Michigan Avenue. Raymond Arroyo returned to the automobile and advised Coulter that Santos was sending someone after the marihuana. Raymond Arroyo had no money in his hands when he returned from conversing with Santos.

Coulter testified that about thirty minutes later, Raymond Arroyo came from the doorway to his automobile and advised him that the marihuana was there. Coulter handed Arroyo $250. Then defendant Morales exited the same doorway carrying a green shopping bag. He handed it to Raymond Arroyo and took the $250 and returned to the doorway. It was later determined that the bag contained marihuana.

Again, on May 4, Coulter and the Arroyo brothers returned to East Chicago and stopped near 3320 Michigan Avenue. Raymond Arroyo said he would "see if Santos had any marihuana." The others went to a nearby restaurant. Raymond went into the doorway hereinbefore described. He later returned to the restaurant, reporting that Santos had only one and a half pounds of marihuana left. Coulter agreed to and did pay $250 to Raymond Arroyo who departed from the restaurant and reentered the doorway. A short time later Santos and Raymond Arroyo came out of the doorway, and Santos entered the restaurant. He said to Francisco Arroyo in Spanish—"Everything is ready, get going." All but Santos left the restaurant and entered Coulter's automobile. Then, while Santos watched from across the street, Raymond Arroyo and DeJesus came from the direction of 3320 Michigan. DeJesus had a bag which he placed in Coulter's automobile. Santos and DeJesus walked back entering the doorway next to 3320 Michigan. An examination disclosed that the bag left in Coulter's car contained marihuana.

While it is apparent Santos endeavored to stay in the background, he was a close observer of and a participant in both transactions. It is clear that substantial evidence aliunde the declarations support the trial court's decision to allow the jury to consider these declarations in their deliberations.

█ We hold there was sufficient independent evidence to support the jury's decision as to the existence of a conspiracy on April 16 and another conspiracy on May 4, and that defendant Santos joined in and became a part of each conspiracy. "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, supra, p. 80, 62 S.Ct. p. 469.

█ The presence of Santos at the scene of each transaction and his participation in each transaction are sufficient evidence from which his possession and control of the marihuana might reasonably be inferred by the jury. As in United States v. Gibson (2 Cir., 1962), 310 F.2d 79, 81, Santos was sufficiently associated with the persons having physical possession of the marihuana so that he was able to cause the marihuana to be produced for a customer. He had constructive possession of the narcotics. Bass v. United States, 326 F.2d 884 (8 Cir., 1964)

█ Even if the appellant had not joined the conspiracy until after the co-conspirators got to East Chicago, the conviction must be sustained. As this Court recently stated in United States v. Hickey (7 Cir., 1966), 360 F.2d 127, 140, a defendant who joined "the conspiracy at a later date, took the conspiracy as he found it. When he joined and actively participated in it he adopted the previous acts and declarations of

his fellow conspirators. United States v. Bucur (7 Cir., 1952), 194 F.2d 297, 302. These acts became admissible against him, at least as they tended to show the nature and objectives of the conspiracy he joined."

We have considered other points raised by defendant Santos but find them to be without merit.

As we conclude there was no prejudicial error in the trial of this case, the judgment of conviction is

Affirmed.